2013-1157

NONCONFIDENTIAL

---

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

uPI SEMICONDUCTOR CORPORATION,

Appellant,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee,

and

RICHTEK TECHNOLOGY CORP. AND RICHTEK USA, INC.,

Intervenors.

---

On appeal from the United States International Trade Commission in
Investigation No. 337-TA-698.

---

# NONCONFIDENTIAL BRIEF OF APPELLEE
# INTERNATIONAL TRADE COMMISSION

CLARK S. CHENEY
CLINT A. GERDINE
Attorneys for Appellee
Office of General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-2661

PAUL R. BARDOS
Acting General Counsel
Telephone (202) 205-3102

WAYNE W. HERRINGTON
Assistant General Counsel
(202) 205-3090

The material redacted from pages 9, 20-23, 27 , and 34-47 of the Commission's non-confidential brief was designated as confidential business information during the investigation under appeal and was granted confidential treatment by the Commission. *See* 19 U.S.C. § 1337(n); *see also* 19 C.F.R. § 210.5.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF RELATED CASES ......................................................... 1

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF ISSUES ........................................................................... 2

STATEMENT OF THE CASE ...................................................................... 3

    A.    The Original 337 Violation Investigation .................................... 3

    B.    Enforcement Proceedings Before the ALJ.................................. 6

    C.    Enforcement Proceedings Before the Commission ................. 10

STATEMENT OF FACTS .......................................................................... 14

    A.    DC-DC Power Controllers ....................................................... 14

    B.    Richtek's Trade Secrets............................................................ 16

    C.    uPI's Formerly Accused Products Were Produced Using Richtek's Trade Secrets........................................................... 17

    D.    uPI's Post-Consent Order Products Were Produced Without Using Richtek's Trade Secrets................................... 19

    E.    uPI's Formerly Accused Products Infringe the '190 Patent ....................................................................................... 20

    F.    uPI's Knowing Participation in the U.S. Supply Chain........... 21

SUMMARY OF THE ARGUMENT ........................................................... 24

ARGUMENT................................................................................................ 29

I.    Standard of Review ......................................................................... 29

II.    The Commission Correctly Construed and Applied the Language of the Consent Order........................................................ 30

# TABLE OF CONTENTS CONT'D

A.    The Commission Correctly Construed the "Knowingly Aiding or Abetting" Provision of the Consent Order .............. 31

B.    uPI Previously Argued *For* the Interpretation of the "Aiding and Abetting" Clause that It Argues *Against* in This Appeal ........................................................................... 33

C.    uPI Admits It Violated the Consent Order by Directly Importing Accused Products on at Least One Day .................. 34

D.    Substantial Evidence Supports a Conclusion that uPI Aided and Abetted the Importation of Accused Products on 53 Additional Days in Violation of the Consent Order ...... 34

    1.    Substantial Evidence Supports the Commission's Finding That uPI Knew the Sale of Its Power Controllers Would Result in the Importation of Those Controllers into the United States ....................... 34

    2.    Substantial Evidence Supports the Commission's Finding that Downstream Products Containing uPI's Power Controllers Were Imported into the United States on 53 Days Without Richtek's Consent ...................................................................... 42

E.    The Remaining 8 Days of Violation in the Commission's Determination Were Based on an Expert's Error ................... 47

III.    The Commission Acted Within Its Statutory Authority When Ordering Civil Penalties for uPI's Violation of the Consent Order It Drafted ................................................................. 48

A.    uPI Abandoned Any Argument that the Commission's Civil Penalties Order Exceeded the Commission's Authority ................................................................................ 48

B.    The Commission Did Not Order the Exclusion of Downstream Products ............................................................ 50

C.    The Commission Did Not Exceed Its Authority When It Entered and Enforced the Consent Order Drafted by uPI ....... 52

D.    As Drafter of the Consent Order, uPI Had Adequate Notice of Its Terms .................................................................. 55

## TABLE OF CONTENTS CONT'D

E.    uPI Lacks Standing to Assert Claims on Behalf of
Hypothetical Downstream Product Importers ........................ 55

IV.   The Commission Did Not Err in Its '190 Patent Infringement
Determination .................................................................................... 57

A.    Review of the Commission's Infringement Determination
Would Not Change the Outcome Because the Same
Products Were Produced Using Richtek Trade Secrets........... 57

B.    The Commission's Infringement Analysis Is Correct ............. 58

CONCLUSION ........................................................................................... 61

# TABLE OF AUTHORITIES

**CASES**

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723 (1975) ................................................................ 58

*Broadcom Corp. v. Int'l Trade Comm'n,*
542 F.3d 894 (Fed. Cir. 2008) ................................................ 51

*Checkpoint Sys. v. Int'l Trade Comm'n,*
54 F.3d 756 (Fed. Cir. 1995) .................................................. 51

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 (1984) ................................................................ 30

*Corning Glass Works v. Int'l Trade Comm'n,*
799 F.2d 1559 (Fed. Cir. 1986)............................................... 30

*Fed. Trade Comm'n v. Mandel Bros., Inc.,* 359 U.S. 385 (1958) ................ 54

*Fed. Trade Comm'n v. Ruberoid Co.,* 343 U.S. 470 (1952) ........................ 54

*Finnigan Corp. v. U.S. Int'l Trade Comm'n,*
180 F.3d 1354 (Fed. Cir. 1999)......................................... 24, 51

*Fuji Photo Film Co. v. Int'l Trade Comm'n,*
474 F.3d 1281 (Fed. Cir. 2007)................................... 29, 30, 56

*Henderson v. Shinseki,* 131 S. Ct. 1197 (2011)........................................... 51

*Hyundai Elecs. Indus. Co. v. Int'l Trade Comm'n,*
899 F.2d 1204 (Fed. Cir. 1990)............................................... 54

*KPMG, LLP v. Sec. Exchange Comm'n,*
289 F.3d 109 (D.C. Cir. 2002) ............................................... 54

*Kyocera Wireless Corp. v. Int'l Trade Comm'n,*
545 F.3d 1340 (Fed. Cir. 2008).................................... 24, 52, 53

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ........................... 24, 57

*Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283 (Fed. Cir. 2012).......................... 32

*Pass & Seymour, Inc. v. Int'l Trade Comm'n,*
617 F.3d 1319 (Fed. Cir. 2010)............................................... 30

*San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n,*
161 F.3d 1347 (Fed. Cir. 1998).......................................*passim*

## TABLE OF AUTHORITIES CONT'D

*Smith Int'l, Inc. v. Hughes Tool Co.*,
    718 F.2d 1573 (Fed. Cir. 1983) .................................................. 32

*Spansion, Inc. v. Int'l Trade Comm'n*,
    629 F.3d 1331 (Fed. Cir. 2010) .................................................. 29

*Texas Instruments Inc. v. Int'l Trade Comm'n*,
    988 F.2d 1165 (Fed. Cir. 1993) .................................................. 51

*TianRui Group Co. Ltd. v. Int'l Trade Comm'n*,
    661 F.3d 1322 (Fed. Cir. 2011) .................................................... 3

*Viscofan, S.A. v. Int'l Trade Comm'n*,
    787 F.2d 544 (Fed. Cir. 1986) ...................................... 29, 54, 56

*Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*,
    535 F.3d 1322 (Fed. Cir. 2008) .................................................. 58


STATUTES
    19 U.S.C. § 1337 ................................................................. *passim*
    35 U.S.C. § 271 .......................................................................... 61


REGULATIONS
    19 C.F.R. § 210 .................................................................... 30, 50


FEDERAL REGISTER NOTICES
    75 Fed. Reg. 446  (Jan. 5, 2010) .................................................. 3
    76 Fed. Reg. 55109 (Sept. 6, 2011) ............................................. 6


ADMINISTRATIVE DECISIONS
*Certain Neodymium-Iron-Boron Magnets, Magnet Alloys,
    and Articles Containing Same*, Inv. No. 337-TA-372,
    Comm'n Op. (Oct. 3, 1997) ...................................................... 32

## STATEMENT OF RELATED CASES

Appellee U.S. International Trade Commission ("the Commission") is not aware of any related cases other than those noted in the Statement of Related Cases made by appellant uPI Semiconductor Corp. ("uPI").


## STATEMENT OF JURISDICTION

Pursuant to Federal Circuit Rule 28(b), the Commission states that it has no disagreement with appellant's jurisdictional statement.

## STATEMENT OF ISSUES

The Commission disagrees with appellant's statement of the issues. Pursuant to Federal Circuit Rule 28(b), the Commission submits that the issues on appeal are more properly framed as follows:

1.  Whether uPI has waived its newly-raised argument that the Commission exceeded its statutory authority when it ordered civil penalties against uPI for violating a consent order where:

    a.  uPI itself drafted and submitted the consent order;

    b.  the consent order prohibits uPI from challenging its validity; and

    c.  uPI never argued to the Commission that the Commission lacks authority to order uPI to pay civil penalties under the circumstances of this case.  JA5860-902.

2.  If the issue is not waived, whether the Commission's order of civil penalties exceeds the Commission's statutory authority.

3.  Whether substantial evidence supports the Commission's factual finding that uPI violated the consent order by importing and by knowingly aiding and abetting the importation into the United States or the sale for importation into the United States of products containing DC-DC controllers that (a) were produced using or contain the trade secrets of intervenors Richtek Technology Corp. and Richtek USA, Inc. (collectively, "Richtek"), (b) infringe U.S. Patent No. 7,315,190 ("the '190 patent"), and (c) were imported into the United States on at least 54 days.

## STATEMENT OF THE CASE

The Commission finds appellant's Statement of the Case to be incomplete and provides its own Statement here pursuant to Federal Circuit Rule 28(b).

This appeal is from the Commission's final determination in an action to enforce a consent order entered in *Certain DC-DC Controllers and Products Containing the Same*, Inv. No. 337-TA-698 (Enforcement Proceeding). Congress has charged the Commission with the responsibility for making determinations about certain unfair trade practices defined in section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337, or "section 337"). Those unfair practices include the importation of articles that infringe U.S. patents (section 337(a)(1)(B)) and the importation of articles made using or comprising misappropriated trade secrets (*TianRui Group Co. Ltd. v. Int'l Trade Comm'n*, 661 F.3d 1322 (Fed. Cir. 2011)). The Commission proceedings leading to the determination under review are outlined below.

### A.    The Original 337 Violation Investigation

The Commission instituted the original investigation relating to this appeal on January 5, 2010, based on a complaint filed by Richtek. 75 Fed. Reg. 446. Richtek is a Taiwanese company that designs and sells power

- 3 -

management integrated circuits, including DC-DC controllers.[1]  JA000409.

Richtek alleged that the respondent company uPI was formed in 2005 by

former Richtek employees.  JA000411; JA006943-JA6945 at Q31-Q33.

Richtek contended that those former employees used Richtek trade secrets to

design and sell competing DC-DC controllers for uPI.  JA000406-07;

JA000434-39.  Richtek asserted that uPI violated section 337 by importing

into the United States, selling for importation into the United States, and/or

selling after importation into the United States DC-DC controllers and

products containing such controllers.[2]  JA000408.  Richtek also alleged that

the products in question infringed Richtek's '190 patent and U.S. Patent

Nos. 6,414,470 ("the '470 patent") and 7,132,717 ("the '717 patent").

JA000425.  The Commission delegated the taking of evidence in the matter

to an ALJ.

On July 21, 2010, shortly before the evidentiary hearing in the

investigation was scheduled to begin, uPI drafted and submitted to the ALJ a

motion to terminate the investigation as to uPI based on a consent order

---

[1]  As is discussed more fully below, DC-DC controllers are integrated
circuits ("ICs") that convert direct current ("DC") from one voltage to
another voltage.

[2]  Richtek also alleged that certain downstream purchasers of uPI
products, including respondents Advanced Micro Devices, Inc. ("AMD")
and Micro-Star International ("MSI"), violated section 337 by selling or
importing products containing uPI DC-DC controllers.  Those parties
eventually settled with Richtek.

stipulation.  JA001685-1703.  The motion contained a proposed consent order.  *Id.*  uPI told the ALJ that entering the order would "save tremendous judicial, public, and private resources that are necessarily implicated in the course of final preparations for and conduct of a full hearing."  JA001685.  As a *quid pro quo* for saving its "private resources," uPI stated it would not itself import or knowingly aid or abet the sale for importation or importation into the United States of any DC-DC controllers or products containing such controllers which infringe the asserted patents or which are produced using or which contain Richtek's asserted trade secrets.  JA001693.

On July 22, 2010, the ALJ issued an initial determination terminating uPI from the investigation based on uPI's consent order stipulation.  The Commission determined not to review the ID and issued the consent order on August 13, 2010.  The relevant portion of the consent order is reproduced below:

> A.    Effective immediately upon the entry of this Consent Order, **uPI will not import** into the United States, sell for importation into the United States, or sell or offer for sale in the United States after importation, **or knowingly aid, abet**, encourage, participate in, or induce **importation into the United States**, the sale for importation into the United States, or the sale, offer for sale, or use in the United States after importation, without the consent or agreement of Richtek, **any DC-DC controllers or products containing same which infringe** claims 1-11, 26, or 27 of the '190 patent, claims 29 or 34 of the '470 patent, claims 1-3 or 6-9 of the '717 patent, **or which are produced using or which contain Richtek's asserted trade secrets**.

JA113874-75 (emphasis added).

- 5 -

Because all respondents either settled or were terminated based on consent orders, neither the Commission nor the ALJ made any findings of fact or conclusions of law concerning the alleged section 337 violations in the underlying investigation.  Of particular note, the Commission made no findings specifically identifying Richtek's trade secrets, nor did it make any findings that uPI had made products using or containing those trade secrets.

A year later, Richtek filed an enforcement complaint with the Commission alleging, *inter alia*, that uPI had violated the consent order. The Commission instituted an enforcement proceeding on September 6, 2011, and named uPI as a respondent.  76 Fed. Reg. 55109-10 (JA001937-38).[3]  The Commission delegated the taking of evidence in the enforcement proceeding to an ALJ.

### B.    Enforcement Proceedings Before the ALJ

In March 2012, the ALJ held an evidentiary hearing concerning uPI's alleged violation of the consent order.  The ALJ issued an enforcement initial determination ("EID") on June 8, 2012.  JA000052-182.  The EID focused on two categories of uPI products:  products of the type that were accused in the original investigation (which the ALJ called "formerly

---

[3]  The Commission's notice of investigation also named Sapphire Technology Limited ("Sapphire"), as a respondent, but Sapphire eventually settled with Richtek and was terminated from the enforcement proceeding. JA000061.

accused products," JA000061-63) and products that uPI developed after the consent order was issued (which the ALJ called "newly developed products," JA000064-65).

The ALJ found that uPI's formerly accused products "were created with the assistance of misappropriated Richtek documents and files." JA000151. Accordingly, the ALJ determined that the sale for importation and importation of those products violated the consent order. JA000154-155. In contrast, the ALJ found that, due to "clean room" procedures, "uPI's newly developed products are not derived from Richtek trade secrets and thus do not violate the uPI consent order when imported or sold in the United States, unless shown to infringe an asserted patent." JA000160.

With respect to the '190 patent, only formerly accused products were alleged to have been sold or imported in violation of the consent order. The ALJ stated that those products, "standing alone, do not directly infringe any of the asserted claims of the '190 patent." JA000106. The ALJ went on to state, however, that when the formerly accused uPI products were "incorporated into an evaluation board or one of the accused downstream products," then "every required element" of the asserted claims of the '190 patent is present. *See, e.g*., JA000107. The ALJ determined that uPI did not contribute to or induce infringement the '190 patent because he concluded "uPI has engaged in good faith efforts to prevent its customers from

importing and/or selling such infringing products *in the United States*, as opposed to overseas." JA000115.

With respect to the '470 patent, the ALJ found that uPI's formerly accused products and newly developed products both directly infringed the asserted '470 patent claims. JA000121-128. The ALJ stated that "any imports, sales for importation, or sales after importation of these chips, or of downstream products containing these chips, would constitute a violation of uPI's consent order." JA000128.

With respect to the '717 patent, the ALJ found that uPI's formerly accused products and newly developed products, "standing alone or as implemented in a typical application circuit in a downstream product" directly infringe the asserted '717 patent claims. JA000136, JA000140.

The ALJ evaluated extensive evidence of importation of all of the accused uPI products, both the formerly accused products and the newly developed products. JA000070-86. The ALJ determined that the uPI consent order had been violated when products he had determined to be infringing or to have been produced using trade secrets were imported into the United States. JA000176. The ALJ noted that uPI admitted it imported goods in violation of the consent order on at least one day, August 18, 2010. JA000070. The ALJ found the importation of downstream products on 74 other days also violated the consent order. JA000176. The ALJ found no violation of the consent order when products were imported by downstream

- 8 -

companies that had authorization from Richtek. JA000071-80; JA000172-73. The ALJ further found no violation based on uPI sales to downstream manufacturers prior to January 29, 2011. The ALJ relied on expert evidence to conclude that any chips sold by uPI after August 13, 2010, the date of the consent order, would not appear in a downstream product imported into the United States until at least January 29, 2011. JA000170-71.

The ALJ summarized the number of violation days and record evidence supporting his findings in a table, which has been annotated below with corresponding references to materials in the Joint Appendix in this appeal:

| Seller | Days in Violation | Source | Joint Appendix |
|---|---|---|---|
| [[    ]] | 1 | RX-237C at 7<br>RX-68C | JA117619<br>JA114546<br>JA114548 |
| [[    ]] | 21 | CDX-141C at 5-6 | JA006739-40 |
| [[    ]] | 10 | RX-1518C at 99 | JA120215 at Q. 336 |
| [[    ]] | 0 | CDX-135C<br>RDX-251C | JA124359-60<br>JA124380-81 |
| [[    .'] | 0 | CDX-137C<br>RX-1380C | JA124361<br>JA124382-85 |
| [[    ]] | 43 | CDX-139C | JA006730-34 |
| [[    ]] | 0 | CX-2349C<br>RX-167C | JA124338-49<br>JA124362-79 |
| [[    ]] | 0 | CX-2374C<br>RX-167C | JA124350-52<br>JA124362-79 |
| **TOTAL** | 75 | | |

JA000176 (*JA citations added*).

The ALJ assessed penalties of $10,000 for each day he found imports in violation of the consent order.  JA000165-75.  Because the ALJ determined 75 days of violation, he recommended a total penalty against uPI of $750,000.  The ALJ also found the record contained evidence that uPI's corporate ownership was changing.  Accordingly, the ALJ recommended that the consent order be modified to clarify that it applies and has always applied to all uPI affiliates, past, present, or future.  JA000165.

## C.    Enforcement Proceedings Before the Commission

On June 25, 2012, uPI petitioned the Commission to review the ALJ's EID.[4]  In uPI's own words, its petition was "limited to two critical issues." JA005864.  First, uPI contested the 74 days of violation which were based on the importation by others of downstream products containing uPI controllers.[5]  For those days, uPI argued, "the ALJ was required to find, based on the express language of the Consent Order, that uPI knowingly aided and abetted sales for importation, importation, and post-importation sales by third parties of downstream products."  JA005865.  uPI contended that the ALJ made no such finding.  *Id.*

---

[4]  Richtek also petitioned the Commission for review of the ALJ's determination, raising a variety of issues that are not relevant to this appeal.

[5]  As for the 75th day, uPI did not contest that when it shipped certain products into the United States on August 18, 2010, it violated the consent order.  JA005865 at n.1.

uPI's second argument in its petition to the Commission was for review of the ALJ's finding of infringement with respect to certain method claims of the '470 patent. uPI argued that to prove a violation of the consent order based on those method claims, Richtek was required to prove that uPI performed the steps of the claimed method in the United States. JA005867-68. uPI contended that the record lacked such proof.

Significant to this appeal, uPI never argued to the Commission that the Commission did not have authority to find a violation of the consent order based on knowingly aiding and abetting others in the importation of downstream articles that contain infringing power controllers or power controllers that were produced using Richtek's trade secrets. Further, uPI never petitioned for review of the ALJ's infringement determinations with respect to the '190 patent. *See* JA005860-903.

On August 9, 2012, the Commission issued a notice that, based on the parties' petitions, it had determined to review certain findings in the ALJ's EID. Those were the ALJ's finding of infringement of the '470 patent; the ALJ's finding of infringement of the '190 patent; and the number of days that articles were imported in violation of the consent order. JA6156-59. The Commission solicited additional briefing from the parties on those issues. *Id*. The Commission did not review the ALJ's trade secret findings, but the Commission did state that it would review the ALJ's determination that uPI violated the consent order on 75 days. JA006157.

- 11 -

On November 14, 2012, the Commission issued a notice concerning its final determination. JA006444-45. The Commission issued an opinion affirming ALJ's finding that uPI's formerly accused products were produced using or contained Richtek's trade secrets but that uPI's later developed products were produced without such trade secrets. JA000019-20.

The Commission affirmed the ALJ's finding that downstream products incorporating uPI's formerly accused controllers comprise all elements of the asserted '190 patent claims. JA000014. The Commission therefore determined that those downstream products directly infringe the '190 patent claims. *Id.* Because of this direct infringement finding, the Commission determined that it need not reach the issue of indirect infringement. *Id.* The Commission therefore vacated the ALJ's finding that uPI does not induce infringement of the '190 patent. *Id.*

The Commission reversed the ALJ's finding that uPI's accused products infringed the asserted method claims of the '470 patent and found no violation of the consent order with respect to that patent. JA000019. The Commission also vacated as moot the portion of the EID relating to the '717 patent because the asserted claims of that patent were cancelled following issuance of a reexamination certificate on October 3, 2012. No party has sought review of the Commission's determinations with respect to the '470 and '717 patents, either in this appeal or in the companion Appeal No. 13-1159.

The net result of the foregoing infringement and trade secret determinations was a conclusion that the importation of uPI's newly developed products did not violate the consent order.  JA000020 at n.5.

With respect to uPI's formerly accused controllers, the Commission's opinion expanded upon the evidence in the record that uPI had aided and abetted others in the importation of those products in violation of the consent order.

Based on these findings, the Commission found that uPI violated the consent order by aiding and abetting the importation of downstream products which incorporated infringing uPI power controllers or uPI controllers made using Richtek's trade secrets.  Because the Commission did not adopt several of the ALJ's infringement findings, the Commission determined that the number of days that products had been imported into the United States in violation of the consent order should be reduced from 75 to 62.  The Commission adopted the ALJ's penalty recommendation of $10,000 per day of violation and ordered a civil penalty of $620,000 against uPI.  The Commission also ordered that the consent order be modified to clarify that it applies to all uPI affiliate companies.

On January 11, 2013, uPI filed this appeal.  On January 14, 2013, Richtek filed related Appeal No. 13-1159.

## STATEMENT OF FACTS

### A.    DC-DC Power Controllers

The products at issue in this appeal are DC-DC controllers and the downstream products that contain them.  DC-DC controllers are integrated circuits ("ICs") that handle power management functions for devices, specifically the conversion of one direct current voltage into another. JA000067.  Most electronic appliances include some sort of power regulation in their circuitry.  A DC-DC controller IC is typically sealed inside a plastic package and electrically connected to a printed circuit board ("PCB") by metal pins that extend from the package.  *Id.*

If two controller ICs have the same arrangement of metal pins, with each pin assigned to the same function, then the controller ICs are said to be "pin-to-pin compatible," meaning that the controllers can be used interchangeably on a PCB.  JA000067-68.  Many electronic device manufacturers prefer using ICs that are pin-to-pin compatible so that they can obtain ICs from more than one source without changing their PCB design.  uPI and Richtek each design power controller ICs that are pin-to-pin compatible with similar ICs designed by the other.

uPI and Richtek create and market IC designs but do not actually fabricate the ICs they design.  JA000068.  Thus, uPI, Richtek, and other similar companies are known as "fabless" design companies.  Such companies partner with a semiconductor foundry for manufacture of the

- 14 -

chips they design.  A fabless company designs its products to comply with
the foundry's manufacturing specifications.  Each foundry has its own
requirements based on, among other considerations, the limitations of its
manufacturing equipment.  *Id*.

Circuit designs are also influenced by the abilities and limitations of
electronic design automation ("EDA") software.  EDA software allows an
engineer to create a pictorial representation of the components of a circuit
and the connections between them.  JA000068.  Such a representation is
called a schematic.  To reduce the effort involved in creating a schematic,
most EDA software programs provide the user with a symbol library.  A
symbol library is a collection of pre-designed transistors, logic circuits, and
other common circuit components.  *Id*.  An engineer can paste symbols from
the library into a circuit design rather than designing these commonly used
components from scratch.  *Id*.  The commercially available EDA software
used by engineers at both Richtek and uPI is called Laker AMS.
JA007263-64 at Q. 222-224.

A fabless circuit design, therefore, is a product of a specific foundry's
specifications, available EDA software tools, and the designer's original
input.  JA000068.

DC-DC controllers are typically sold through distributors to original
equipment manufacturers ("OEMs") that install the chips in PCBs before
entry into the United States.  JA000068-69.  In addition, the PCBs

themselves may be installed in larger products, such as a laptop computers or mobile phones, before entering the United States. *Id*.

DC-DC controllers may also enter the United States without being installed in a device, for example when they are ordered as samples for testing. In that circumstance, a controller may be installed on an "evaluation board" before being shipped into the United States. *Id*.

### B.     Richtek's Trade Secrets

Richtek's trade secrets relate to software used to design ICs and include certain files used with the commercially available Laker AMS design software. JA000146-47. Laker AMS allows engineers to create, view, and edit schematics for ICs. JA007263-64 at Q. 222-224. Richtek pursued three categories of trade secrets in the enforcement proceedings before the Commission: circuit schematics and symbol libraries (referred to by the ALJ as Trade Secret 11); layout files (Trade Secret 12); and ECS.ini files (Trade Secret 13(a)). JA000141-45.

With regard to the first category, Richtek's engineers have created libraries of customized circuit elements for use within the Laker AMS software. JA6949 at QQ56-59. Custom symbols are specific arrangements of basic circuit components like resistors, capacitors, and transistors. Richtek's symbol libraries allow engineers to design larger circuit schematics more easily. JA007520-JA7521 at QQ278-82.

With regard to the second category, Richtek uses layout files to depict the manner in which the physical layers of the silicon are arranged in a chip. The names of these design files have a ".GDS" extension, for Graphic Data System.  *See* JA006959-64 at QQ71-85; JA007553-JA7557 at QQ343-50.

With regard to the third category, an ECS.ini file provides certain initial attributes and values to the Laker AMS software.  Richtek has developed a customized ECS.ini file for working with its schematics. JA006987-7005; JA006949 at QQ. 53-54; JA006990 at Q. 10; JA007263 at QQ. 220-24.

Each of these three categories of trade secrets derive economic value from being concealed from the general public (JA000146) and Richtek took reasonable steps to protect the secrecy of that information (JA000147).  The Commission affirmed the ALJ's factual findings relating to Richtek's trade secret allegations.  JA000019-20.

### C.    uPI's Formerly Accused Products Were Produced Using Richtek's Trade Secrets

Many uPI employees, particularly its founders and management team, are former Richtek employees.  JA000148 (listing former Richtek employees employed by uPI).  Those employees were key participants in the design of Richtek's 2005-2006 product lines, and each had signed Richtek's nondisclosure agreement.  Those employees had access to Richtek's most

sensitive technical trade secrets and had a duty to keep that information confidential.  JA000149.

   After leaving Richtek, uPI personnel used trade secret information obtained from Richtek to make products that competed directly with Richtek products.  JA000149.  Former Richtek employees copied technical documents, including Richtek's ECS.ini file, circuit schematics, and symbol files onto portable memory devices.  JA000150.  While employed at uPI, those former Richtek employees circulated internal email messages that had confidential Richtek documents attached.  *Id*.  Some of those messages contained reminders to uPI colleagues to remove Richtek markings before further distributing the documents.  *Id*.

   uPI successfully sought to obtain Richtek confidential information from third parties.  In one particularly egregious instance, a uPI employee sent out an e-mail stating, "Dear all, Could you please steal IC for RT8209? Please support me."  JA000150 (citing CX-1973C, JA125157).  The ALJ found, and the Commission affirmed, that "[e]ven without a comparison of uPI and Richtek schematics, the weight of the evidence suggests that the accused uPI product families were created with the assistance of misappropriated Richtek documents and files."  JA000151.

### D.     uPI's Post-Consent Order Products Were Produced Without Using Richtek's Trade Secrets

After entering into the consent order, uPI created a "clean room procedure" intended to ensure that the research and product development for its next generation of DC-DC controllers would be entirely independent of any knowledge uPI personnel might have had about Richtek's products and operations.  JA000155-56.  uPI hired outside developers to create the new base designs and layouts.  None of the outside developers had any previous affiliation with Richtek or with uPI, and none had access to Richtek or uPI integrated circuit designs or layouts.  JA000158; JA117650-51 at Q. 119.

The specifications for the new chips were written by Ben Tsai, a uPI employee who had never worked for Richtek, was not a circuit designer, had never seen the circuit designs for the existing uP1 products, and did not know any details of the circuit designs for the existing uPI products.  JA000158; JA117650 at Q. 118.  Mr. Tsai wrote specifications that only describe the functionality of the products and do not describe how to design the circuits or to create the layout.  Mr. Tsai created the specifications based on the needs and requirements communicated by uPI customers, not simply as replacements for the existing products.  *Id*.

The outside circuit designers used only the functional specifications provided by Mr. Tsai, publicly available documents, and other materials created without reference to uPI or Richtek materials when composing the base designs.  JA000158; JA117650-51 at Q. 119.

- 19 -

The Laker AMS symbol library and ECS.ini configuration file used by the outside circuit designers was created by Charles Chang. Although Mr. Chang was a uPI employee, he created the ENS.ini configuration file by referring to notes from his university class, without reference to uPI or Richtek materials. JA000158; JA117650-51 at Q. 119. Those university notes appear in the record and contain identical lines of code to those used in uPI's newly developed ECS.ini file. *Compare* JA117492-93 *with* JA008392; JA008395; JA120362.

uPI spent approximately [[            ]] dollars to develop its new products using the foregoing precautions. JA000174; JA117590.

After weighing the evidence as a whole, the ALJ (and subsequently the Commission) determined that "regardless of any similarities that [uPI's] post-consent order designs may bear to Richtek's products," uPI's newly developed products "are not derived from Richtek trade secrets and thus do not violate the uPI consent order when imported or sold in the United States, unless shown to infringe an asserted patent." JA000159-60.

**E.    uPI's Formerly Accused Products Infringe the '190 Patent**

The asserted claims of the '190 patent pertain to a pulse width modulation ("PWM") circuit that may receive programming signals without the need for extra IC package pins. JA113826-28. The ALJ determined that downstream products containing uPI's formerly accused products directly infringe the relevant claims of the '190 patent when they are imported into

- 20 -

the United States.  JA000106-115.  uPI did not petition the Commission for review of that determination.

The Commission affirmed the ALJ's direct infringement determination with respect to the '190 patent.  The Commission cited evidence of uPI controllers incorporated into larger downstream circuit designs that depict all elements of the asserted claims of the '190 patent. JA000014 (citing JA103454-73; JA008397-462; JA007903-05; JA007921-27; JA008084).  Having found direct infringement, the Commission did not need to reach the issue of indirect infringement and therefore vacated the ALJ's determination on that issue.  JA000014.

### F.    uPI's Knowing Participation in the U.S. Supply Chain

Prior to entry of the consent order, uPI typically sold its DC-DC controllers through Taiwan distributors [[                                        ]]. These distributors subsequently sold the stand-alone controllers to various contract manufacturers of video graphic cards, motherboards, and products such as evaluation or testing boards.  Of the manufacturers that use uPI's DC-DC controllers in their products, certain ones are known to supply the U.S. market.  In particular, Asian companies [[

                        ]] are major contract manufacturers of end-user consumer electronic devices (incorporating uPI's DC-DC controllers) destined for the United States.  They typically contract with electronics companies, such as U.S.-headquartered [[                                        ]], to

- 21 -

assemble the companies' finished products before these products are imported into the United States for sale. JA000008 (citing JA007038-42; JA007069-71; JA007082-83).

Orders for the accused uPI controllers originating from the contract manufacturers travel up the supply chain. Specifically, the contract manufacturers order the accused uPI controllers they use to assemble the finished products from uPI's [[

    ]]. JA000008 (citing JA117616; JA005244; JA005250-51). In response, the distributors place the contract manufacturers' orders with uPI and often provide uPI with [[

                                    ]].

uPI continued this same practice after entry of the consent order. The Commission concluded that uPI set shipments into the United States "into motion" by continuing to sell its controllers through channels "which uPI admittedly knew would result in importation into the United States." JA000025. In support of uPI's knowledge, the Commission credited testimony from uPI's executives, James Chang, President, and Doris Ko, Manager of Strategic Marketing, stating that, after the consent order issued, [[

    ]]. JA000024 (citing JA123067-268 (JX-16C); JA113916-21; JA113965-66; JA113980; JA005243-44). The Commission also cited messages from uPI to its customers stating that uPI would [[

]] implying that uPI power controllers could be shipped to the United States notwithstanding the consent order. JA000026 (citing JA123286-96 (CX-690C)).

## SUMMARY OF THE ARGUMENT

uPI does not, by this appeal, challenge the terms of the consent order it entered into with the Commission, or its validity.  Neither does uPI contest the Commission's determination that uPI's formerly accused products were produced using Richtek trade secrets.  Instead, uPI admits it violated the consent order on at least one day.  As to the remaining days of violation, uPI has now invented new arguments for this appeal that it never presented to the Commission.  These new arguments are as incorrect as they are untimely, and they should be rejected by this Court.

First, uPI claims that the Commission's order for civil penalties in this case is an "end-run" around this Court's decision in *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340 (Fed. Cir. 2008) because it allegedly "effectively exclude[es] downstream products of non-respondents" from entry into the United States.  uPI Br. at 21.  Not only does uPI lack standing to assert this argument in this appeal on behalf of hypothetical downstream manufacturers, but uPI also never presented this argument to the Commission.  Accordingly, the Court should decline to entertain the argument.  *See Finnigan Corp. v. U.S. Int'l Trade Comm'n*, 180 F.3d 1354, 1362-63 (Fed. Cir. 1999) (arguments not presented to Commission are abandoned); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 n.1 (1992) (to have standing, "the injury must affect the plaintiff in a personal and individual way.").

- 24 -

If the Court were to examine uPI's argument on the merits, it would find that uPI's characterization of the Commission's determination is completely fictitious.  The Commission did ***not*** order the exclusion of non-respondents' downstream products.  The sole agency action at issue here is the Commission's determination that uPI—not some other party—violated its own consent order and must pay civil penalties.

uPI's argument also rests on a leap of logic.  uPI claims that "since uPI cannot sell the chips that would end up in downstream products," the Commission has "effectively exclude[ed]" those downstream products from importation.  uPI Br. at 21.  uPI's conclusion does not follow from its premise.  The record shows a downstream manufacturer can purchase pin-to-pin compatible power controllers from Richtek that are equivalent in all material respects to uPI's unauthorized controllers.  Restricting uPI's ability to aid and abet the importation of articles containing unauthorized power controllers does not restrict the ability of downstream non-respondents to choose authorized controllers for their products.

uPI next contends that the Commission has exceeded its statutory authority by ordering a remedy (the alleged exclusion of non-respondents' downstream products) that is greater than the Commission could order in an original violation proceeding.  That argument fails for at least three reasons.  First, the argument continues to build on uPI's false premise that the Commission ***has*** excluded downstream products of non-respondents, but the

Commission has done no such thing.  The Commission merely ordered uPI to pay civil penalties for violating the consent order uPI itself drafted.  Second, uPI's argument amounts to an attack on the validity of the consent order, and uPI promised not to contest the order's validity when it bargained for its entry.  Third, the Commission's authority to enter consent orders and order civil penalties for violations of those orders is well established.  *See* 19 U.S.C. §§ 1337(b), (c), and (f); *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1354-56 (Fed. Cir. 1998).

uPI also hypothesizes that some uPI chips in the downstream products evaluated by the Commission "may well have been sold and shipped before entry of the consent order."  uPI apparently believes that theory raises the possibility of a "reasonable doubt," so it should prevail.  But that is not the correct evidentiary standard.  Richtek's burden was to prove by a preponderance of the evidence that uPI violated the consent order.  It met that burden, as shown by the extensive factual findings in ALJ's EID and the Commission's opinion.  Although uPI has apparently ignored those findings, they link uPI's sales and uPI's knowledge to unauthorized importations.

Finally, uPI protests that the Commission found uPI liable for direct infringement of the '190 patent.  uPI's own brief shows this argument to be a straw man set up for uPI to knock down.  As uPI admits in its brief at page 59, reversing the Commission's infringement findings with respect to the '190 patent "will not change the total days of violation, or the associated

penalties," because the same infringing uPI products were also produced using Richtek trade secrets.  Moreover, uPI also couches its argument as requiring the Court to reverse the Commission's infringement findings "*to the extent* the Commission based its finding of violation on infringement by uPI."  uPI Br. at 59 (emphasis added).  uPI had to include the qualifying "to the extent" language because it knows that the Commission made **no** finding that uPI itself directly infringes the asserted claims of the '190 patent.  Rather, the Commission found that downstream articles containing formerly accused uPI power controllers contain every element of the claims and therefore when uPI aided and abetted the importation of those articles into the United States, it violated the consent order.

With respect to one issue, however, it appears that uPI is correct.  At the time the Commission made its final determination, the Commission believed, in reliance upon the testimony of Richtek's expert, that two [[                    ]] contained unauthorized uPI power controllers when they were imported into the United States.  *See* JA000081 (citing JA006735-40).  The bills of materials for those [[                    ]] (as identified by uPI in its brief to this court at p. 53) indicate that Richtek's expert was mistaken as to the correct uPI chip model in those products.  JA120029-113.  The Commission therefore concedes that the [[

       ]] devices did not contain unauthorized power controllers at the time of importation.  The Commission does not object to this Court reducing the

- 27 -

number of days of violation by eight days to 54 and reducing the total civil
penalty assessed against uPI to $540,000.  In all other respects the
Commission's determination should be affirmed.

**ARGUMENT**

## I.     STANDARD OF REVIEW

uPI's brief lacks a complete presentation of the standard of review for each issue raised in its appeal.  The Commission submits that the following legal standards apply to uPI's appeal.

In an appeal of the Commission's assessment of civil penalties for violation of a Commission order, judicial review of the Commission's choice of remedy "necessarily is limited."  *Viscofan, S.A. v. Int'l Trade Comm'n*, 787 F.2d 544, 548 (Fed. Cir. 1986).  The Court reviews the Commission's legal determinations without deference and its factual determinations for substantial evidence.  *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1293 (Fed. Cir. 2007).  Under the substantial evidence test, the Court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion."  *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010).

However, uPI states that it does not, by this appeal, challenge the consent order's terms or its validity.  uPI Br. at 34.  Accordingly, it is unclear whether uPI's appeal raises any questions of law.  To the extent that review of the Commission's remedy requires interpretation of section 337— the statute the Commission is charged to administer—this Court must defer to the Commission's reasonable interpretation of the statute.  *See Corning*

*Glass Works v. Int'l Trade Comm'n*, 799 F.2d 1559, 1565 (Fed. Cir. 1986);
*see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S.
837, 842-45 (1984).

With respect to uPI's challenge of the Commission's '190 patent
infringement determination, this Court reviews the Commission's legal
determinations *de novo* and its factual findings regarding the structure and
functionality of accused devices with deference.  *See Pass & Seymour, Inc.
v. Int'l Trade Comm'n*, 617 F.3d 1319, 1323 (Fed. Cir. 2010).

## II.    The Commission Correctly Construed and Applied the Language of the Consent Order

The Commission has the authority to terminate a section 337
investigation based on a consent order and to order remedies when the
consent order is violated.  *See* 19 U.S.C. § 1337(c); 19 C.F.R. §§ 210.21(c),
210.75(b); *San Huan*, 161 F.3d at 1354-56.  "uPI does not, by this appeal,
challenge the Consent Order's terms or its validity."  uPI Br. at 34.
Accordingly, the only question presented by this appeal is whether the
Commission's determination concerning the extent of uPI's violations is
supported by substantial evidence.  *See Fuji Photo Film Co.*, 474 F.3d at
1293.  As shown below, the Commission's determination in this
investigation amply meets that standard.

### A.    The Commission Correctly Construed the "Knowingly Aiding or Abetting" Provision of the Consent Order

The aiding and abetting prohibition in the consent order is reproduced below:

> A.    Effective immediately upon the entry of this Consent Order, ***uPI will not*** import into the United States, sell for importation into the United States, or sell or offer for sale in the United States after importation, or ***knowingly aid, abet***, encourage, participate in, or induce ***importation into the United States***, the sale for importation into the United States, or the sale, offer for sale, or use in the United States after importation, without the consent or agreement of Richtek, ***any DC-DC controllers or products containing same which infringe claims 1-11, 26, or 27 of [the '190 patent]***, claims 29 or 34 of [the '470 patent], or claims 1-3 or 6-9 of [the '717 patent], ***or which are produced using or which contain Richtek's asserted trade secrets***.

JA113874-75 (emphasis added).

The Commission held that uPI would violate the aiding and abetting prohibition if uPI knew that selling infringing chips or chips produced using Richtek trade secrets through its established distribution channels would result in the importation and sale in the United States of downstream products containing those uPI controllers.  In doing so, the Commission merely applied the plain language of the consent order, which states that uPI may not "aid" or "abet" the "importation into the United States" of "any DC-DC controllers or products containing same which infringe claims 1-11, 26, or 27 of [the '190 patent]…or which are produced using or which contain Richtek's asserted trade secrets."  *Id.*

The Commission correctly defined the term "knowingly" in the consent order consistently with uses of the term in section 337 and other legal contexts as "the party knowing that its actions violate the order." JA000021-22 (citing *Merial Ltd. v. Cipla Ltd*., 681 F.3d 1283, 1304-05 (Fed. Cir. 2012) (liability for contempt of an injunction may be shown "if [the parties] are aware of the injunction and know that their acts violate the injunction.").

The Commission correctly found that uPI is bound by the terms of the prohibitive conduct language in the consent order and its failure to comply with these terms constitutes a violation of the order.  JA000021-22 (citing *San Huan*, 161 F.3d at 1349-50, 1358-62).  Accordingly, uPI has "an affirmative duty" to take "energetic steps" to do "everything in [its] power" to assure compliance with the consent order.  *See Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same*, Inv. No. 337-TA-372, Comm'n Op. at 24 (Oct. 3, 1997).  That standard requires uPI to not only keep from crossing the line of violation, but to also "stay several healthy steps away" from it.  *Id*. (citing *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 n.8 (Fed. Cir. 1983) ("the burden of avoiding infringement at the risk of contempt falls upon the one enjoined.").

**B.    uPI Previously Argued _For_ the Interpretation of the "Aiding and Abetting" Clause that It Argues _Against_ in This Appeal**

In contrast to the Commission's straightforward interpretation of the consent order, uPI claims that the "aiding and abetting" clause is limited to a proscription on aiding and abetting others in the importation of uPI's *own* products.  uPI Br. at 34.  uPI claims that the clause cannot apply to aiding and abetting the importation of downstream products made by someone else. *Id*.  That completely novel argument was never presented to the Commission and should be rejected for at least that reason.  In fact, uPI took exactly the opposite position before the Commission.  Below uPI argued:

> The Consent Order can be violated in two ways.  The first is a direct violation…The second is an indirect violation.  ***uPI indirectly violates the Consent Order if***, after entry of the Consent Order, ***it knowingly aids, abets***, encourages, participates in, or induces ***the importation of,***…infringing or misappropriating DC-DC controllers or ***products containing the same***. …[F]or an indirect violation, the Consent Order explicitly requires that uPI "knowingly aid[ed], abet[ted], encourage[d], participate[d] in, or induce[d]" the sale for importation, importation, or post-importation sale ***of such downstream product.***

JA005874 (emphasis added).

Thus, uPI admitted that the consent order "can be violated" by aiding and abetting the importation of downstream products containing infringing or misappropriating controllers.  The Commission's interpretation of the consent order is consistent with the position that uPI took before the Commission, and it contains no error.

- 33 -

**C.    uPI Admits It Violated the Consent Order by Directly Importing Accused Products on at Least One Day**

uPI admits that it violated the consent order when it directly imported its uP7701 and uP6219 chips into the United States after the consent order was issued.  uPI Br. at 12 n.5.  Those violations both occurred on August 18, 2010.  Thus, the Commission's assessment of a $10,000 penalty for that day of violation should be affirmed.

**D.    Substantial Evidence Supports a Conclusion that uPI Aided and Abetted the Importation of Accused Products on 53 Additional Days in Violation of the Consent Order**

**1.    Substantial Evidence Supports the Commission's Finding That uPI Knew the Sale of Its Power Controllers Would Result in the Importation of Those Controllers into the United States**

The Commission correctly determined that uPI violated the aiding or abetting prohibition of the consent order based on uPI's knowledge, uPI's sales, and U.S. imports and sales by downstream customers [[

]].  *See* JA000080-83, JA000020-35.

First, uPI does not challenge in this appeal the Commission's determination that its formerly accused power controllers were produced using Richtek trade secrets (JA000019), that it sold those controllers into the stream of commerce (JA000025), and that downstream products containing those controllers have been imported into the United States (JA000029).  Instead, uPI contests the sufficiency of the evidence linking those actions.

- 34 -

As shown below, the Commission's determinations are amply supported in the record.

After the consent order issued, uPI continued to sell and ship its formerly accused controllers through its standard distribution channels. uPI sold its uP61xx, uP62xx, uP63xx, and uP77xx products (formerly accused products) to foreign distributors such as [[

]]. *See, e.g.*, JA007081-83, JA005241-44. Those distributors then resold the controllers to contract manufacturers with whom uPI had relationships, including [[                                    ]]. *See, e.g.*, JA007081-83, JA005270-72, JA113917. Those contract manufacturers were known by uPI to import downstream products containing uPI controllers into the United States or were known to ship such downstream products to electronics companies like [[            ]], who then imported the downstream products into the United States. *See id.*

The record concerning uPI's sales includes spreadsheets of purchase order and shipping data showing post-consent order sales of formerly accused controllers to foreign distributors and resales of controllers to contract manufacturers. *See* JA007073; JA103511-4878 (CX-815C-817C). The spreadsheet evidence is found in three exhibits.

First, CX-815C (JA103511-4208) shows uPI's purchase order data from January 1, 2010, to September 17, 2010. Richtek's expert Dr. Cox testified that this exhibit shows "end customer information." JA007073.

The second column from the left shows the foreign distributor and the third column from the left shows the contract manufacturer for each shipment. The third column from the right shows the date of the shipment. For example, JA103814 shows shipments of uP62XX products from UPI to its foreign distributor [[          ]] destined for [[                    ]] in September of 2010, after the entry of the consent order.

The second spreadsheet exhibit, CX-816C (JA104209-607), contains uPI's purchase order data from August 2009 to August 2011. This exhibit shows the name of the foreign distributor for sale in the far left column and the date in the fifth column from the left.

The third spreadsheet, CX-817C (JA104608-878) contains uPI's purchase order data from April 2010 to August 2011. Dr. Cox testified that this spreadsheet shows distributor and end customer information. JA007073. Moving from left to right, distributor information appears in the first column, end customer information appears in the next column, followed by a product model column and a date column. JA104608-878. uPI executive Doris Ko testified that this exhibit shows uPI sold [[

]] of formerly accused devices after the entry of the consent order. JA005241-44.

Specific evidence connects uPI's sales from distributors to contract manufacturers. For example, the record contains tracking reports provided to uPI by its foreign distributor [[          ]]. The reports show post-consent

order sales of uPI's uP7711 (a formerly accused product) to end customers

such as contract manufacturer [[        ]] in December 2010, after entry of

the consent order.  *See* JA123281-85 (CX-679C).

   The record also shows that the contract manufacturers with whom uPI

had established relationships incorporated uPI's formerly accused controllers

into downstream customer products for electronics companies like [[        ,

        ]], which in turn were known by uPI to import and sell such

downstream products in the United States.  *See, e.g*., JA123172,

JA00022-24.  Spreadsheets in the record shows U.S. sales by downstream

customers [[                    ]] of products incorporating formerly

accused controllers found to infringe the '190 patent and products that were

produced using Richtek's misappropriated trade secrets.  *See* JA123297-337

(CX-840C, [[        ]]); JA104879-5283 (CX-842C, [[        ]]);

JA105284-582 (CX-847C, [[        ]]); JA105583-650 (CX-852C-

854C, [[        ]]).  Dr. Cox testified that these records supported a

conclusion that uPI violated the consent order.  JA007090-95, JA007100-02,

JA007120-21.

   uPI's executives, James Chang, President, and Doris Ko, Manager of

Strategic Marketing, testified that, after the consent order issued, uPI

[[

        ]].  *See* JA123116-17, JA 123190 (JX-16C

- 37 -

at 58-59, 139-42); JA113916-17, JA113921, JA113965-66, JA113980 (JX-17C at 41-42, 46, 102-03, 117).  Mr. Chang and Ms. Ko knew that contract manufacturers [[                                        ]] were "major" sellers and importers to the United States, and uPI considered these companies their customers.  *See* JA113916-17, *see also* JA005270-72.

uPI's President responded to a question about whether uPI told its customers to stop incorporating uPI's formerly accused controllers into downstream U.S. products by testifying that uPI "cannot restrict the activities of our customers."  JA113921 (JX-17C at 46).  uPI's President also did not deny that [[                ]] of formerly accused controllers uP6103 and uP7704 were shipped to contract manufacturer/downstream customer [[    ]] on August 16, 2010, after the consent order issued.  JA113965-66; JA113980 (JX-17C at 102-03, 117); *see also* JA103511-4878 (CX-815C-817C).  Similarly, uPI's President did not deny that [[                ]] of formerly accused controller uP7706 were shipped to contract manufacturer [[       ]] on August 16, 2010, after the consent order issued.  JA113980 (JX-17C at 117).  uPI's President admitted, in his deposition testimony, that "if these shipments were made after the consent order, that is a violation of the consent order."  *Id.*  In addition, uPI's executive Doris Ko testified that [[

. ¡] JA123117 (JX-16C at 59); *see also* JA005250 (Ko, Tr. at 752-53). Further, Ms. Ko testified that uPI allowed downstream contract manufacturers or customers such as [[

]] to submit purchase orders as late as February 2012 for uPI's violative controllers, more than a year after the consent order issued, and that uPI was shipping these products as late as May 2012. *See* JA117620 at Q. 50. As described above, these uPI customers [[(

]] assemble downstream products incorporating uPI's formerly accused controllers and are known participants in the channel of trade for shipment of these products to the United States. *See* JA007088, JA007090-91, JA007100-101, JA007082; JA113916-17 (JX-17C at 41-42). Furthermore, Ms. Ko did not deny that uPI [[

]]. *See* JA005254 (Ko, Tr. at 761); JA124353-58 (CCX-6C).

uPI sent out emails and/or notices to its customers stating that it would [[

]] with violative chips (*i.e.*, uP61xx, uP62xx, uP63xx, and uP77xx families of chips) even after the consent order issued. *See* JA123286-96 (CX-690C); JA124353-58 (CCX-6C); JA005250 (Ko, Tr. at 752-53); JA123117, JA123175-82 (JX-

16C at 59, 124-31).  Specifically, uPI sent out a Notice shortly after the

consent order issued, addressed to all customers, that stated, [[

]] JA123286-

96 (CX-690C).  As can be seen, uPI's Notice clearly conflicted with the

terms of the consent order.

Once uPI's controllers reached contract manufacturers or downstream

customers like [[        ]], uPI knew, as supported by substantial evidence,

that these controllers would be incorporated into downstream products for

U.S. importation and sale in violation of the consent order.  *See* JA005270-

74 (Chang, Tr. at 793-99) ([[

]]);

JA113916-17 (JX-17C at 41-42); JA113966 (JX-17C at 103) ([['

]]).  Richtek's expert witness, Dr. Cox, also testified that uPI's

foreign distributors [[                    ]] sold uPI's violative

controllers directly to contract manufacturers, including [[

]], that supply the United States marketplace.

JA007082 (CX-5C-B at 19).  Moreover, uPI's President did not deny that,

after the consent order issued, uPI shipped [[                   ]] to foreign

distributor [[          ]] for contract manufacturer [[         ]], or that uPI

shipped[[                        ]] to foreign distributor [[         ]] for

contract manufacturer [[                 ]].  *See* JA005272 (Chang, Tr. at 796).

Emails, packing lists, invoices, and testimony all link uPI's sales to

U.S. imports.  For example, uPI made post-consent order sales to

downstream producer [[         ]].  *See* JA103498-500 (CX-556C); JA103501-

05 (CX-559); *see also* JA123067-268 (JX-16C at 121-31).  Dr. Cox

determined that these sales occurred on 21 different days after the consent

order.  JA007108.  The evidence indicates that uPI knew that after it shipped

controllers to [[

                         ]] would integrate those controllers into downstream

products for importation and sale in the United States.  *See* JA007101-02;

JA007107-09 (CX-5C-B at 38-39, 44-46).  [[         ]] admitted that it ships

products containing the accused uPI controllers into the United States.

JA125005-06 at ¶¶ 22-23.

Testimony from Ms. Ko further indicates that uPI was aware of

[[          ]] distribution channel into the United States.  *See* JA123067-268

(JX-16C at 121-31).  Ms. Ko testified that uPI informed [[         ]] that uPI

needed to get Richtek's consent before uPI could make any sale of the

uP61xx, uP62xx, uP63xx, or uP77xx family of chips to [[         ]].

JA123067-268 (JX-16C at 121-23); *see also* JA123269-71 (CX-606C).

- 41 -

However, Ms. Ko acknowledged that although uPI never received this consent from Richtek, it continued to ship formerly accused products to [[      ]].  *Id.*  Accordingly, the record evidence indicates that uPI knew that its shipments of controllers to [[              ]] would be subsequently sold for importation and sale in the United States, in violation of the consent order.

The Commission also found that uPI used another corporate entity called [[                             ]] to circumvent the consent order it drafted.  The Commission's opinion contains an extensive discussion of the relationship between uPI and [[          ]]. JA000032-45.

### 2. Substantial Evidence Supports the Commission's Finding that Downstream Products Containing uPI's Power Controllers Were Imported into the United States on 53 Days Without Richtek's Consent

The ALJ found that uPI violated the consent order by aiding and abetting the sale and importation of downstream products from [[

]], which incorporate uPI's violative controllers.  *See* JA000080-83 n.15.  One specific [[

]], which incorporates a formerly accused uPI controller. *See* JA000080-81; JA105583-650 (CX-852C-854C).

The specific violative [[

the N560GTX-Ti HAWK, and the N570GTX Twin Frozr III Power

Edition/OC]].  Those models incorporate formerly accused uPI controllers

uP6103, uP6218, uP7704, uP7706, and /or uP7707.  *See* JA000083 n.15;

JA123297-337 (CX-840C); JA104879-5283 (CX-842C).

The specific violative [[

]].  Those models incorporate

formerly accused uPI controllers from the uP61xx (*e.g*., uP6128), uP62xx

(*e.g*., uP6281), uP63xx (*e.g*., uP6310), and/or uP77xx families (*e.g*., uP7704,

uP7706, uP7710, uP7711, and uP7714).  *See* JA000081-82; JA105284-582

(CX-847C).

The record shows that the controller models that uPI sold to its foreign

distributors are the same controller models found in the imported goods from

[[                          ]].  In July and August 2011, uPI sold a number of

uP6310 controllers to its foreign distributor [[          ]].  The uP6310

controller is the same controller found in [[                            ]].

*See* JA104608-878 (CX-817C); JA105284-582 (CX-847C).  From May to

August of 2011, uPI sold a number of uP7706 controllers to its foreign

distributor [[        ]].  The uP7706 controller is the same controller found

in some of [[                        ]].  *See* JA104608-878 (CX-817C);

JA123297-337 (CX-840C); JA104879-5283 (CX-842C).  From May to July

of 2011, uPI sold a number of uP7704 controllers to its foreign distributor

[[        ]].  The uP7704 controller is the same controller found in other

[[                          ]]. *Id.* Similarly for [[        ]], the evidence
shows post-consent order sales of formerly accused controllers to [[        ]]
including those found in [[                          ]]. *See* JA103498-
500 (CX-556C); JA104209-4607 (CX-816C); JA123067-268 (JX-16C at 80-
82, 121-31); JA105583-650 (CX-852-854C); *see also* JA123286-96 (CX-
690C); JA005254-56 (Ko, Tr. at 760-63) (Ko testimony not denying uPI
intended to supply [[

                        ]]; JA124353-58 (CCX-6C).

     Substantial evidence further establishes that uPI's foreign distributors,
such as [[                            ]], resold the violative chips to
contract manufacturers, such as [[

    ]], for importation and sale into the United States.  Specifically, a
tracking report from [[        ]] (one of uPI's foreign distributors) shows
that the end customers for the uPI violative chips were contract
manufacturers [[                          ]]. *See* JA123281-85
(CX-679C); JA007088-89 (CX-5C-B at Q. 124).  The tracking report shows
that from September through December 2010 (post-consent order) uPI sold
uP7704 and uP7711 controllers headed to contract manufacturers [[

        ]].  Those same controllers are found in [[

                    ]].  JA123281-85 (CX-679C); JA123297-337 (CX-
840C); JA104879-5283 (CX-842C); JA105284-582 (CX-847C).  In

addition, uPI's own purchase order data report shows post-consent order sales of uP7714 controllers through foreign distributor [[         ]] to contract manufacturer [[         ]] in late August 2010.  The same uP7714 controllers are found in the [[                    ]] products imported into and sold in the United States.  *See* JA103511-4208 (CX-815C); JA007073 (CX-5C-B at Q. 52).  Similarly, the purchase order data report shows post-consent order sales of the uP6103 controllers to [[      ]] in late August 2010, and uP6103 controllers are found in the [[                ]] products imported into and sold in the United States.  *Id.*  The purchase order data report shows similar post-consent order sales of the uP7710 controllers to [[       ]], and the uP7710 are found in the [[                  ]] products imported into the United States.  *Id.*

The Commission considered the table (JA000176) in the ALJ's EID summarizing the 75 days on which the ALJ found a violation of the consent order.  The Commission identified the record evidence for the specific days of violation relating to U.S. imports and/or sales by these downstream customers of uPI.  JA000081-82, JA000154-55, JA000176

Upon considering this record evidence, the Commission determined to subtract 13 days from the ALJ's total number of days of violation thereby reducing the total number of days to 62 days.  *See* JA00080-83.  First, the Commission reduced the total by 12 days because it found that the evidence submitted by Richtek to establish the days on sale in the United States by

[[

]], only shows negative

quantities for the following 12 dates listed in Richtek's post-trial exhibit

JA104879-5283 (CX-842C): [[

]].  The

Commission found that the sales records for these dates showed a negative

quantity, which did not provide sufficient evidence of a violation.  Also,

there were no other violations appearing on those dates.

  After removing those 12 dates, the Commission found that the ALJ's

EID includes one day of double-counting, on November 23, 2011, for sales

by [[                    ]].  *See* JA000080-83; JA000175-76; JA123297-337

(CX-840C); JA104879-5283 (CX-842C); JA105583-650 (CX-852C-854C).

Therefore, in accordance with section 337(f)(2), the Commission determined

that uPI either itself imported products or aided and abetted in the

importation or sale of products that occurred on 62 days.  Each of those

importations or sales included a product that either infringed the '190 patent or was produced using or contained Richtek's trade secrets.

### E. The Remaining 8 Days of Violation in the Commission's Determination Were Based on an Expert's Error

At the time the Commission made its final determination, the Commission believed, in reliance upon the testimony of Richtek's expert, that two imported [[                    ]] contained unauthorized uPI power controllers when they were imported into the United States. *See* JA000080-81 (citing JA006735-40 (CDX-141C)). The bills of materials for those [[                ]] (as identified by uPI on page 53 of its brief to this court) indicate that Richtek's expert was mistaken as to the correct uPI chip model in those products. JA120029-113 (RX-1503C, RX-1504C). The Commission therefore concedes that the [[

    ]] devices did not contain unauthorized power controllers at the time of importation. The Commission does not object to this Court reducing the number of days of violation by eight unique days to 54 total days of violation and reducing the total civil penalty assessed against uPI to $540,000. In all other respects the Commission's violation determination and civil penalty remedy should be affirmed.

**III.    The Commission Acted Within Its Statutory Authority When Ordering Civil Penalties for uPI's Violation of the Consent Order It Drafted**

uPI claims, for the first time in this appeal, that the Commission lacks authority to order civil penalties for violation of the consent order under the facts of this case.  As explained below, this argument has not been preserved and uPI lacks standing to bring it.  For at least those reasons it should not be considered by this Court.  But even if the Court were to examine the argument, it would find it has no merit.  It is built on a false factual premise that the Commission excluded downstream products, when the Commission did no such thing.  It is also built on a false legal premise that the Commission has no authority to enter consent orders and to order civil penalties when those orders are violated.  Precedent from this Court holds otherwise.  uPI's argument also amounts to an attack on the validity of the consent order.  The terms of the order, which uPI drafted, preclude uPI from making such an attack.

**A.    uPI Abandoned Any Argument that the Commission's Civil Penalties Order Exceeded the Commission's Authority**

As noted above in the Statement of the Case, the ALJ determined that uPI's formerly accused products "were created with the assistance of misappropriated Richtek documents and files" (JA000151) and that uPI was liable for the "importation, sale for importation, or sale after importation" of those products, including downstream products, under the consent order. JA000154-155.  However, when uPI petitioned the Commission for review

of the ALJ's determination, uPI did not argue that the Commission lacked

statutory authority to find a violation of the consent order in those

circumstances.  JA005860-903.[6]

        As this Court has often noted, the Commission's rules governing

section 337 investigations provide that any issue not raised in the petition for

review is deemed to have been abandoned.  19 C.F.R. § 210.43(b)(2);[7] *see*

*Broadcom Corp. v. Int'l Trade Comm'n*, 542 F.3d 894, 900-01 (Fed. Cir.

2008) (an infringement argument not included in a petition for Commission

review of the ALJ's decision was waived); *Finnigan Corp.*, 180 F.3d at

1362; *Checkpoint Sys. v. Int'l Trade Comm'n*, 54 F.3d 756, 760 (Fed. Cir.

1995) (issue is waived on appeal when the administrative agency is not

given an opportunity to respond by the petitioning party in the first

instance); *Texas Instruments Inc. v. Int'l Trade Comm'n*, 988 F.2d 1165,

---

    [6] uPI did cite *Kyocera* in another brief to the Commission, for a
proposition quite different from the one it advances in this appeal.  In
response to the Commission's request for briefing on the appropriate remedy
for a violation of the consent order, uPI argued that the Commission should
not replace the consent order with a limited exclusion order that expressly
excludes downstream products of non-respondents.  *See* JA006332-36.
uPI's argument that an order for civil penalties violates *Kyocera* is
completely novel and should not be considered by the Court.

    [7] 19 C.F.R. § 210.43(b)(2) states, in relevant part, "Any issue not raised
in a petition for review will be deemed to have been abandoned by the
petitioning party and may be disregarded by the Commission in reviewing
the initial determination."

1176 (Fed. Cir. 1993) (appellants waived an issue on appeal because it was not raised in their petition for review of the ALJ's decision).

Clearly and indisputably, uPI did not raise its novel *Kyocera* argument before the Commission and therefore has abandoned it. The Court need not consider this argument.

uPI may attempt to argue in its reply that its *Kyocera* argument is jurisdictional and therefore it can be raised at any time. But a claim that an agency violated a statutory provision does not amount to a jurisdictional claim unless Congress has "clearly prescribed" the issue in question as jurisdictional. *Henderson v. Shinseki*, 131 S. Ct. 1197, 1201-03 (2011). uPI has provided no evidence of Congressional intent here. Indeed, the *Kyocera* opinion uPI relies upon never described the issue before the Court as jurisdictional. Accordingly, the Court may ignore uPI's tardy (and meritless) argument.

### B. The Commission Did Not Order the Exclusion of Downstream Products

uPI's *Kyocera* argument is based on the fundamentally false premise that the Commission's determination excludes from entry into the United States the downstream products of non-respondents. The Commission did no such thing.

The sole agency action under review here is the Commission's determination that uPI (not some other party) violated the consent order (an

order uPI itself drafted) and therefore must pay civil penalties.  The

Commission's order contains commands to two and only two entities:

"Respondent uPI shall forfeit and pay to the United States a civil penalty"

and "The Secretary shall: (a) serve copies of this Order…[and] (b) publish

notice of this order in the *Federal Register*."  JA000001.  The order simply

does not contain orders directed to downstream importers or any other

entities.

In these circumstances, uPI's reliance on *Kyocera* is completely inapt.

In *Kyocera*, the Commission issued a limited exclusion order that, by its

terms, would have excluded downstream products of non-respondents.

*Kyocera*, 545 F.3d at 1345.  The non-respondents appealed to this Court for

judicial review.  *Id*.  The Court held that section 337 only allows limited

exclusion orders to apply "to named respondents that the Commission finds

in violation of Section 337."  *Id*. at 1356.  The Court vacated the

Commission's exclusion order and remanded the case so that the

Commission would have an opportunity to "reconsider its enforcement

options."  *Id.* at 1358.

None of the material circumstances in *Kyocera* are present here.  Here

the only appellant is a named respondent, not an unnamed importer.  Here

the action under review is an order to pay civil penalties for violation of a

previously entered consent order, not an original violation and remedy

determination.  Here the Commission did not exclude the articles of non-

respondents; it simply ordered a respondent to pay money for violating its own consent order. The reasoning in *Kyocera* is completely inapplicable.

### C.   The Commission Did Not Exceed Its Authority When It Entered and Enforced the Consent Order Drafted by uPI

The precise contours of uPI's convoluted *Kyocera* argument are not clear. On the one hand, uPI appears to claim that the Commission had no authority to enter the 2010 consent order that uPI itself drafted and asked the Commission to enter. *See* uPI Br. at 21 ("There is no authority in Section 337 that would permit the Commission to order by consent more than the maximum remedy that the Commission could impose upon finding a violation."). On the other hand, uPI appears to claim that the Commission has no authority to issue its 2012 civil penalty order based on the violation of the 2010 consent order. *See id*. ("the Commission does not have authority to penalize for violation of a Consent Order [by] 'aiding and abetting' … downstream third party product importations."). But no matter which order uPI is criticizing, the Commission has acted within its authority.

This Court has explained that, like other agencies, "the Commission has broad discretion in selecting the form, scope, and extent of the remedy." *Hyundai Elecs. Indus. Co. v. Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed. Cir. 1990) (quoting *Viscofan*, 787 F.2d at 548); *see also Fed. Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470, 473 (1952) (FTC "is not limited to prohibiting the illegal practice in the precise form in which it is found to

have existed in the past"); *Fed. Trade Comm'n v. Mandel Bros., Inc.*, 359 U.S. 385, 392-93 (1958) (permitting FTC to prohibit like and related acts of misbranding with amended wording of cease and desist order); *KPMG, LLP v. Sec. Exchange Comm'n*, 289 F.3d 109, 122-23 (D.C. Cir. 2002) (permitting SEC to issue a cease and desist order prohibiting related acts).

With respect to the 2010 consent order drafted by uPI, Congress has expressly stated the Commission may terminate an investigation by entry of a consent order. 19 U.S.C. § 1337(c). uPI's attempt to challenge that order in this proceeding is futile for several reasons. First, the order states that "UPI [*sic*] shall not seek judicial review or otherwise challenge or contest the validity of this Consent Order." JA113875 at ¶ D. This Court has held that when a party agrees in a consent order not to challenge the validity of a Commission action in order to terminate litigation, it will be held to its bargain. *San Huan*, 161 F.3d at 1357-58. There is no reason to depart from that rule here.

Second, even if the order did not expressly prohibit validity challenges, uPI still would be precluded from challenging the order in this appeal because it was uPI that drafted the order and asked the Commission to enter it. uPI cannot claim error when the Commission entered the very order that uPI requested.

Third, if uPI wanted to challenge the Commission's authority to issue a remedy based on the relevant facts, the time to do so was in the original

violation investigation. *See San Huan,* 161 F.3d at 1358. ("The time for San Huan to challenge the determinations as to measurement error and prior art limitations on the scope of equivalents was in the original investigation.") But like the appellant in *San Huan*, uPI waived any such challenge "by offering consent and seeking termination of the investigation." *See id.*

The Commission also acted within its authority in 2012 when it ordered uPI to pay civil penalties for violating the 2010 consent order. Such penalties are specifically provided for by statute and apply to violations of consent orders. *See* 19 U.S.C. § 1337(f)(2). This Court has specifically affirmed that "a consent order is enforceable by civil penalty." *See San Huan,* 161 F.3d at 1358.

Here, the Commission narrowly tailored its civil penalty remedy by dramatically reducing the daily violation penalty from the potential maximum $100,000 per day to $10,000 per day of violation. The Commission also revised downward the number of violation days argued by Richtek and determined by the ALJ. Nevertheless, the penalty the Commission entered will provide "a powerful deterrent to ensure a 'sufficiently vigilant posture' towards complying with the consent orders in the future." JA000176 (citing *San Huan*, 161 F.3d at 1362). Because the Commission's remedy bears a reasonable relation to uPI's violation of the consent order, this Court should affirm it. *See Viscofan*, 787 F.2d at 549.

- 54 -

### D. As Drafter of the Consent Order, uPI Had Adequate Notice of Its Terms

uPI claims that it was not given adequate notice that the consent order would be construed to provide "a more severe remedy than the most severe remedy the Commission could order (without GEO findings) if it had found a violation of Section 337." uPI Br. at 36. That argument is meritless for at least two reasons. First, the Commission did not order the exclusion of downstream products, as uPI pretends. Second, uPI drafted the consent order itself; it cannot deny having notice of its provisions. *See Fuji Photo Film Co.*, 474 F.3d at 1292-93 (where a remedial order explicitly stated that it applied to "principals, stockholders, [or] officers," the chief operating officer had notice of his obligations under the order).

The Commission interpreted the consent order here in the most straightforward manner possible, giving effect to words that uPI would like to ignore. It was uPI that promised not to aid or abet the importation of downstream products that infringe the '190 patent or that use Richtek trade secrets. JA113874-75. uPI has no one to blame but itself for violating the terms to which it agreed.

### E. uPI Lacks Standing to Assert Claims on Behalf of Hypothetical Downstream Product Importers

uPI's claim that the Commission's remedy in this matter results in the exclusion of non-respondents' products also raises a question of standing. To have standing in a federal court, the Supreme Court has stated that a

- 55 -

litigant must demonstrate that it has personally suffered a concrete and particularized injury. *Lujan*, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

uPI's attempt to defend downstream importers against an imagined Commission determination in this appeal fails the Supreme Court's test for standing on at least three levels. First, uPI's theory fails the requirement for "concrete" injury. The Commission did ***not*** issue orders excluding the importation of non-respondents' products. uPI's argument that it "effectively" does so lacks any support in the evidentiary record. To the contrary, the record shows that many non-respondents are able to import downstream products authorized by Richtek. JA000071-86.

Second, uPI lacks standing because its theory of injury to downstream importers is not "personal" to uPI. uPI is attempting to obtain an adjudication from this Court regarding the actions of entities who are not before this Court. This Court rejected a similar strategy in *Yingbin-Nature (Guangdong) Wood Indus. Co. v. International Trade Commission*, 535 F.3d 1322 (Fed. Cir. 2008). In that case, a group of respondents referred to collectively as Power Dekor asked this Court to review the Commission's infringement determination concerning laminate flooring designs made by separate, non-appealing respondents. *Id*. at 1330. The Court declined to do so, noting that an adverse finding against one party in that particular action

would have no preclusive effect against future importations of another party. *Id.* at 1332.

Finally, even if uPI had standing to assert claims on behalf of non-respondents, those non-respondents would not have standing in this action. A "well-settled line of authority" from the Supreme Court "establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975). The hypothetical downstream importers that uPI has unilaterally undertaken to defend were not parties to the consent order at issue in this appeal and therefore would lack standing in this appeal.

## IV.  The Commission Did Not Err in Its '190 Patent Infringement Determination

uPI claims that "[t]he Commission's finding of direct infringement by uPI of the '190 patent (if that is what it found) was erroneous and must be reversed." uPI Br. at 59. As shown by that passage, uPI defeats its own argument when making it. The Commission never found that uPI directly infringed the asserted claims of the '190 patent. The argument is a straw man, and as explained below, the Court need not address it.

### A.  Review of the Commission's Infringement Determination Would Not Change the Outcome Because the Same Products Were Produced Using Richtek Trade Secrets

As uPI admits in its brief at page 59, review of the Commission's infringement findings with respect to the '190 patent "will not change the

total days of violation, or the associated civil penalties," because the same infringing products also were produced using Richtek trade secrets. The Court need not address uPI's patent infringement arguments for at least this reason.

## B.    The Commission's Infringement Analysis Is Correct

Should the Court reach the merits of uPI's patent infringement argument, it should affirm the Commission's determination. Under the terms of the consent order, knowingly aiding or abetting the importation into the United States of "any DC-DC controllers *or* products containing same which infringe claims 1-11, 26, or 27 of [the '190 patent]." JA113875 (emphasis added). Accordingly, if a product containing a uPI controller meets all of the limitations of an asserted claim of the '190 patent, then that product infringes the '190 patent. When uPI aides and abets the importation of such products it violates the consent order.

This is exactly what the ALJ found. The ALJ's analysis of direct infringement of the '190 patent was straightforward. *See* JA000106-13; JA000013-14. Although the ALJ did find that the accused uPI controllers, standing alone, did not directly infringe, he specifically found that downstream products incorporating uPI controllers, did infringe the asserted claims of the '190 patent. JA000106-07. He found that the uP61xx datasheets, which the record evidence indicated the accused downstream products emulate, show typical application circuits for incorporating the pre-

consent order uPI controllers into larger downstream circuit designs that depict all elements of the asserted claims of the '190 patent, and thereby infringe.  JA000013-14, JA000105-13; *see also* JA006810 (CDX-310C); JA008397-462 (CX-189C); JA007903-05 (CX-15C at 8-10); JA007921-27 (CX-15C at 26-32); JA008084 (CX-15C at 189 Q. 500).

After the ALJ found each element of the '190 patent claims present in accused downstream devices (findings that uPI does not appeal), the ALJ explicitly stated:

> Richtek also contends that certain uP61xx chips infringe the '190 patent.  . . . Shortly before filing the [Enforcement]  Complaint, Richtek obtained graphics cards and motherboards in the United States that contained . . . uPI chips from the 'formerly accused' [pre-consent order] uPI product families.  . . . Richtek contends that the presence of these downstream products in the United States, each containing accused uPI chips manufactured after August 13, 2010 . . . is evidence that uPI has continued to engage in activities prohibited by the consent order.

JA000062-64.

The ALJ also presented a table in this portion of the EID, entitled "Formerly Accused uPI Products Alleged to Have Entered the United States After the Effective Date of the uPI Consent Order," that explicitly listed the pre-consent order controller models uP6101 and uP6161 ("Synchronous Rectifed Buck Controllers") as being accused of infringing the '190 patent. JA000062-63 n.2; JA005618.

The Commission affirmed the ALJ's determination that downstream products incorporating uPI controllers contain all of the elements of the asserted claims of the '190 patent. JA000014. That determination, in combination with evidence that uPI aided and abetted the importation of such downstream products, established a violation of the consent order by uPI. The Commission therefore did not need to reach the issue of indirect infringement. *Id*.

At bottom, uPI's patent infringement argument appears to quibble with the syntax that the ALJ and the Commission used when discussing infringement. Section 337 uses different language concerning infringement than the Patent Act uses. Section 337 speaks of "articles that infringe" rather than infringing actions performed by people. *Compare* 19 U.S.C. § 1337(a)(1)(B)(i) *with* 35 U.S.C. § 271. Accordingly, the Commission did not err when it determined that downstream products containing every element of the asserted '190 patent claims directly infringe those claims. As shown above, substantial evidence supports the Commission's infringement determinations with respect to the '190 patent. Substantial evidence also supports the Commission's determination that uPI violated the consent order by aiding and abetting the importation of downstream products containing infringing uPI power controllers.

- 60 -

## CONCLUSION

For the forgoing reasons, the Commission's determination should be affirmed.


Respectfully submitted,


/s/ Clark S. Cheney
PAUL R. BARDOS
Acting General Counsel
WAYNE W. HERRINGTON
Assistant General Counsel
CLARK S. CHENEY
Attorney-Advisor
CLINT A. GERDINE
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
(202) 205-2661

Date:  August 23, 2013

## <u>CERTIFICATE OF SERVICE</u>

I, Clark S. Cheney, hereby certify on this 23rd day of August 2013 that a true and correct copy of the attached NON**CONFIDENTIAL BRIEF OF APPELLEE INTERNATIONAL TRADE COMMISSION** is being filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Clark S. Cheney</u>
Clark S. Cheney
Attorney for Appellee
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2661
Facsimile: (202) 205-3111
Clark.Cheney@usitc.gov

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(a)(7)(C)


Pursuant to Fed. R. Civ. P. 32(a)(7)(B), I hereby certify that the attached brief contains 12,883 words, according to the word-count function of the word-processing system used to prepare the brief (Microsoft Word 2010).



/s/ Clark S. Cheney
Clark S. Cheney

Date:  August 23, 2013